**FILED**

**SEP 3 0 2002**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE BANKAMERICA | ) | |
| CORP. SECURITIES | ) | MDL No. 1264 |
| LITIGATION | ) | |

## ORDER

Before the Court is a motion to approve the proposed settlement agreement (Doc. 485), and the revised plan of allocation ("RPA") (Doc. 564), as fair, reasonable and adequate. For the following reasons, the Court hereby APPROVES as fair, reasonable and adequate the proposed settlement and RPA (Docs. 485, 564).

**I.     Background**

The Court incorporates herein its July 8, 2002 Order in this case (Doc. 553), in which the Court analyzed the proposed settlement agreement and original plan of allocation, and held that:

> A $490 million global settlement which provides $333.2 million to the NationsBank classes and $156.8 million to the BankAmerica classes is fair, reasonable, and adequate when considering: the probability of plaintiffs' success on the merits; the range of recovery; the complexity, expense and likely duration of the litigation; the stage of proceedings; defendants' ability to withstand a greater judgment; and the opinions of class counsel, class representatives and class members. The proposed plan of allocation is fair, reasonable and adequate with respect to all NationsBank plaintiffs, the BankAmerica holder plaintiffs and pre-October BankAmerica purchaser plaintiffs.

Doc. 553 at 46. In its July 8 Order, however, the Court rejected the settlement and plan of allocation on the grounds that the plan of allocation unfairly provided no recovery to the

#571

"October purchasers" of Bank of America stock who did not sell their shares at a loss before December 31, 1998. Id. at 35-43. By contrast, the original plan of allocation offered: one "damaged share" for each share of NationBank stock held past October 14, 1998; one damaged share for each share of BankAmerica stock held as of September 30, 1998; and up to two damaged shares for each share of Bank of America stock purchased between October 1 and 13, 1998, and sold at a loss before December 31, 1998.[1] See id. at 10-11. The notice of settlement estimated that a damaged share of BankAmerica or Bank of America stock would be worth roughly $.22.

In its July 8 Order, the Court held that even though the October purchasers' federal claims were governed by the PSLRA bounce-back provision, the October purchasers nevertheless were entitled to some recovery due to their California state law claims. The Court invited counsel to submit a revised plan of allocation with respect to the October purchasers which reflected: (1) the strength of their claims under California law, which are not subject to the PSLRA bounce-back provision; (2) the strength of their Section 10(b) and 10b-5 claims, which are subject to the bounce-back; and (3) the strength of their claims as compared to the strength of the claims of other plaintiffs. See Doc. 553 at 42. The Court recognized that such a calculus might result in a recovery per share of less than a full

---

[1] The original plan of allocation provided that the recovery for shares of Bank of America stock sold at a loss would not exceed the actual value of such loss. The original plan also provided one tenth of a damaged share for each share of NationsBank stock sold between October 1 and 13, 1998, and one tenth of a damaged share for each share of Bank of America stock purchased and sold between October 1 and 13, 1998.

damaged share, but held that it reasonably could not result in no recovery at all.  <u>Id.</u>

BankAmerica plaintiffs submitted the RPA on July 19, 2002.  <u>See</u> Doc. 564.  On July 26,

objectors Ernesto Gumapas, Sidney Sorkin, Herman Shyken and Allison Desmond filed an

objection thereto.  <u>See</u> Doc. 565.  On September 18, 2002, the Court heard oral argument

regarding the fairness, reasonableness and adequacy of the RPA.

## II.   RPA

### A.   Proposed Allocation

The RPA allocates one-half of a damaged share for each share of Bank of

America stock purchased between October 1 and 13, 1998, and held through December 31,

1998 or sold before December 31, 1998 at no actual loss.  <u>See</u> Doc. 564, Ex. A.  Like its

predecessor, the RPA provides one damaged share for each  share of BankAmerica stock

held as of September 30, 1998, and up to two damaged shares for each share of Bank of

America stock purchased between October 1 and 13, 1998, and sold at a loss before

December 31, 1998.  <u>Id.</u>  BankAmerica plaintiffs contend that such revised allocation

reflects, as required by the Court, the strength of the October purchasers' federal and

California state law claims, as well as the claims of the other BankAmerica plaintiffs.

First, BankAmerica plaintiffs contend that the federal claims of all

BankAmerica plaintiffs are stronger on liability than the California claims of the October

purchasers.  Importantly, the October purchasers' California claims require a showing of

"willful intent," a more stringent requirement than proving recklessness under Section 10(b).

3

Second, while the federal claims of the October purchasers are stronger factually than the federal claims of the other BankAmerica plaintiffs because of "hard" loss information available to defendants after September 30, 1998, and statements made by Hugh McColl on October 1, 1998, the PSLRA bounce-back extinguishes the value of the federal claims of the October purchasers who did not sell at a loss. By contrast, the value of the federal claims of the BankAmerica holders, pre-October purchasers, and October purchasers who sold at a loss is not so limited.[2] Accordingly, BankAmerica plaintiffs contend that the RPA provides a fair, reasonable and adequate recovery to all BankAmerica plaintiffs, and accounts for the relative strengths and weaknesses of all BankAmerica plaintiffs' claims.

## B.    Objection to RPA

The sole objection to the proposed RPA has been filed by objectors Ernesto Gumapas, Sidney Sorkin, Herman Shyken and Allison Desmond (the "Desmond objectors"). The Desmond objectors contend that the RPA, like the original plan of allocation, compensates the October purchasers unfairly. First, they claim that the RPA unfairly "penalizes" the October purchasers on account of their California claims' requirement of intentional misconduct. See Doc. 565 at 2. They argue that it would not be "meaningly more difficult" for the October purchasers to prove willful intent on their California claims than it would be for other plaintiffs to prove recklessness under Section 10(b). See id. They continue to insist that the October purchasers' California claims are stronger than the claims

_____

[2]BankAmerica holders' federal claims are not subject to the PSLRA bounce-back. The Court has never ruled that the pre-October purchasers' claims are subject thereto.

of other plaintiffs and that the October purchasers should be compensated accordingly. Additionally, the Desmond objectors challenge the RPA's retention of the December 31, 1998 "cut-off" date. Finally, they contend that the RPA's allocation to the October purchasers is unfair when compared to recoveries of plaintiffs in other securities cases.[3]

## C. Analysis

The Court finds that the RPA compensates all BankAmerica plaintiffs, including the October purchasers, fairly, reasonably and adequately. First, as discussed extensively in its July 8 Order, the Court finds the BankAmerica plaintiffs' Section 10(b) claims to be much stronger than their California claims. See Doc. 553 at 32-34. To prevail on their California claims, BankAmerica plaintiffs would have to prove a willful intent to defraud. See id. By contrast, BankAmerica plaintiffs would have to prove only recklessness with respect to their Section 10(b) claims. As previously noted, proving willful intent to defraud is "a particularly high hurdle." Id. at 33. The Court flatly rejects the Desmond objectors' contention that the line between recklessness and willful intent is a distinction without much difference. Accordingly, because the October purchasers who held their

---

[3] The Court authorized only those objections which were strictly limited to the fairness, reasonableness and adequacy of the RPA with respect to the recovery of the October purchasers. See Doc. 554. Accordingly, the Court does not consider the Desmond objectors' contention that the claims of the BankAmerica holders lack settlement value, other than to note that a similar objection was made, and rejected, with respect to the original plan of allocation. See Doc. 553 at 23-24. Similarly, the Court does not consider the Desmond objectors' attempt to revive their objection to the adequacy of the representation provided by BankAmerica class counsel, other than to note that, at the September 18 hearing, counsel for the Desmond objectors conceded that the representation which the Desmond objectors now allege to be tainted by conflict once was sought by their own counsel in a related California case.

shares, or sold at no loss, are deprived by the PSLRA bounce-back of a recovery on their
Section 10(b) claims, the Court finds it fair, reasonable and adequate that such purchasers
receive a smaller recovery than other BankAmerica plaintiffs who have viable Section 10(b)
claims.

   The Court finds that the retention of the December 31, 1998, "cut-off" date
does not render the RPA unfair, unreasonable or inadequate. Under the original plan of
allocation, the December 31, 1998 cut-off date served to preclude most October purchasers
from sharing in any of the settlement proceeds. See Doc. 553 at 41. The Court thus criticized
the use of such cut-off date because, while patterned after the PSLRA's ninety-day bounce-
back provision, it effectively extinguished the October purchasers' California claims, which
were not subject to the PSLRA bounce-back. See id. By contrast, the RPA provides a
recovery to all October purchasers, regardless of whether they held their shares past
December 31. Accordingly, under the RPA, the impact of the December 31 cut-off date with
respect to the October purchasers' California claims virtually has been eliminated.

   Finally, the Court finds a comparison of the recovery of the October purchasers
pursuant to the RPA to the recoveries of plaintiffs in other securities cases not to be
instructive. In its July 8 Order, the Court held that a global settlement of $490 million, of
which $156.8 million would be awarded to the BankAmerica plaintiffs, was fair, reasonable
and adequate. See Doc. 553. Accordingly, the Court finds that the relevant comparison is
not to the recovery of plaintiffs in other cases, but rather to the recovery of other plaintiffs

in the instant case. While BankAmerica plaintiffs concede that the lion's share of their

$156.8 million recovery will be awarded to plaintiffs who held BankAmerica stock as of

September 30, 1998[4], the Court finds that the RPA compensates all BankAmerica plaintiffs

proportionately with the strength of their relative claims, and thus fairly, reasonably, and

adequately compensates all BankAmerica plaintiffs.

**III.    Notice of RPA**

Counsel for BankAmerica plaintiffs have submitted a proposed revised notice

and notice "supplement" to be mailed along with the original class notice to all October

purchasers. See Doc. 564, Exs. A, B. The proposed revised notice informs the October

purchasers of the terms of the RPA. Specifically, it states in relevant part:

> Each share of BankAmerica common stock purchased between
> October 1, 1998 and October 13, 1998, and sold or held after
> that date equals one-half of a damaged share, except that such
> shares sold between October 14, 1998 and December 31, 1998,
> which were sold at an actual loss greater than the value of one-
> half damaged share, will receive the lesser of the actual loss or
> the value of two damaged shares.

Id., Ex. A. Additionally, the proposed supplement informs all October purchasers who did

not sell their shares at a loss between October 14, 1998 and December 31, 1998, that they

have now been allocated a portion of the settlement fund. BankAmerica plaintiffs have

---

[4] At oral argument, counsel for BankAmerica plaintiffs estimated that, under the RPA:
October purchasers who held their stock through December 31, 1998 would be awarded
approximately $4.8 million; October purchasers who sold their stock at a loss would be awarded
approximately $3.9 million; and holders of BankAmerica stock as of September 30, 1998 would
be awarded the remainder (approximately $148.1 million).

informed the Court that the claims administrator is capable of identifying the October purchasers for notification purposes.

The Desmond objectors object on the grounds that: (1) the revised notice and supplement do not discuss why or how the plan of allocation has been changed; (2) the terms of the revised notice are unclear and likely to cause confusion and discourage claims; and (3) even if the October purchasers can be separately identified and notified, it is improper to notify only the October purchasers of the RPA because the rights of all BankAmerica plaintiffs are affected by the RPA.

The Court finds the contents of the proposed revised notice and supplement to be acceptable. As required by Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999), the October purchasers already have been notified that they are members of a pending class action, that a settlement had been proposed, and that they had the right to state their objections at a fairness hearing. See Doc. 553 at 29-31. The October purchasers now will be notified of the relevant revisions to the proposed plan of allocation, particularly that they will be entitled to recover half a damaged share per share of Bank of America stock, i.e., "an increased portion of the settlement fund." See Doc. 564, Ex. B. Accordingly, the revised notice comports with Petrovic. See Petrovic, 200 F.3d at 1153 (due process is met when a notice provides a reasonable summary of the stakes of the litigation, particularly where class members easily could acquire more detailed information by dialing a telephone number included in the notice).

8

When read together with the original notice, the revised notice and supplement clearly inform the October purchasers that they are being offered a per share recovery of half a damaged share under the RPA, and that this is more than they were offered under the original plan of allocation. Moreover, because the original class notice estimated the per share value of a damaged share at $.22, simple math will inform October purchasers that they are being offered roughly $.11 per share. The Court finds that the revised notice and supplement are not likely to cause confusion, but rather are likely to encourage the submission of additional claims.

Finally, because the October purchasers are the only plaintiffs whose rights will be materially affected by the RPA, they are the only plaintiffs who must be notified thereof. The original notice of settlement estimated the per share value of a damaged share of BankAmerica stock to be $.22. The additional shares which the RPA makes eligible to participate in the settlement fund reduce the approximate value of a damaged share from $.2236 to $.2168. See Doc. 564 at 2 n.1. Because a damaged share continues to be worth approximately $.22 per share under the RPA, sending a revised notice to all BankAmerica plaintiffs is not necessary.

## IV.    Conclusion and Instructions

The Court hereby APPROVES the proposed settlement and RPA (Docs. 485, 564).

Accordingly, the Court hereby authorizes counsel and the claims administrator to send copies of the original class notice, the revised notice and the supplement to all October purchasers, on or before Friday, October 11, 2002.  The Court further authorizes counsel and the claims administrator to accept and treat as timely filed all claims of October purchasers delivered or post-marked on or before Friday, November 22, 2002.

So ORDERED.

_____

**UNITED STATES DISTRICT COURT**

**Date:    SEPTEMBER 30, 2002**

10

UNITED STATES DISTRICT COURT    EASTERN MISSOURI
INTERNAL RECORD KEEPING

**** CONSOLIDATED CASE ****

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 09/30/02 by dbraun
                    4:99md1264    BankAmerica Corp vs

15:77 Securities Fraud

| | |
|---|---|
| Arthur Abbey - | Fax: 212-684-5191 |
| Robert Abrams - | Fax: 212-686-0114 |
| Mark Anderson - | Fax: 415-861-3151 |
| Jonathan Andres -  73763 | Fax: 314-862-1606 |
| Richard Appleby - | Fax: 212-809-6274 |
| Robert Berg - | Fax: 201-461-9598 |
| Daniel Berger - | Fax: 212-554-1444 |
| Neal Berinhout - | Fax: 404-876-4476 |
| Jeffrey Block - | Fax: 617-542-1194 |
| Aaron Brody - | Fax: 212-490-2022 |
| Jules Brody - | Fax: 212-490-2022 |
| Tzivia Brody - | Fax: 212-490-2022 |
| Lisa Buckser - | Fax: 212-554-1444 |
| Vincent Cappucci - | Fax: 212-894-7272 |
| Martin Chitwood - | Fax: 404-876-4476 |
| John Clear -  2828 | Fax: 314-259-2020 |
| Donald Clooney -  2830 | Fax: 314-231-6909 |
| Thad Davis - | Fax: 212-403-2000 |
| Richard Donaldson - | Fax: 302-622-7100 |
| Marc Edelson - | Fax: 215-230-8735 |
| Jay Eisenhofer - | Fax: 302-622-7100 |
| Andrew Entwistle - | Fax: 212-894-7272 |
| Mark Epstein - | Fax: 213-687-3702 |
| Robert Finkel - | Fax: 212-486-2093 |
| Burton Finkelstein - | Fax: 202-337-8090 |
| Marvin Frank - | Fax: 212-682-1892 |
| Andrew Friedman - | Fax: 202-408-4699 |
| Robert Frutkin - | Fax: 215-923-9353 |
| David Fry - | Fax: 415-512-4077 |
| Mark Gardy - | Fax: 212-684-5191 |

Melvin Goldman -
MORRISON AND FOERSTER LLP
425 Market Street
San Francisco, CA  94105 - 2482

| | |
|---|---|
| Mark Grady - | Fax: 212-684-5191 |
| John Grant - | Fax: 415-288-4534 |
| Stuart Grant - | Fax: 302-622-7100 |
| Martin Green -  3265 | Fax: 314-862-1606 |
| Harvey Greenfield - | Fax: 212-949-0049 |
| Bernard Gross - | Fax: 215-561-3000 |
| Deborah Gross - | Fax: 215-561-3000 |
| Marc Gross - | Fax: 212-661-8665 |
| Peter Harrar - | Fax: 212-686-0114 |
| D. Hufford - | Fax: 212-661-8665 |
| Joe Jacobson -  3471 | Fax: 314-862-1606 |
| David Jaroslawicz - | Fax: 212-732-6746 |
| Michael Karnuth - | Fax: 312-606-0207 |
| Reed Kathrein - | Fax: 415-288-4534 |
| Shannon Keniry - | Fax: 202-337-8090 |
| Jeffrey Kessinger -  67972 | Fax: 208-474-9379 |
| Jeffrey Konis - | Fax: 404-876-4476 |
| Daniel Krasner - | Fax: 212-545-4653 |
| Clinton Krislov - | Fax: 312-606-0207 |

Nicole Lavallee -                              Fax: 415-433-6382
William Lerach -                               Fax: 619-231-7423
Mark Levison -   5560                          Fax: 314-613-2550
Lester Levy -                                  Fax: 212-486-2093


Mel Lifshitz -
BERNSTEIN AND LIEBHARD
10 E. 40th Street
New York, NY  10016


Mitchell Margo -  3742                         Fax: 314-725-8789
Michael Matraia -                              Fax: 617-542-1194
Robert Mazur -                                 Fax: 212-403-1000
Joseph McBride -                               Fax: 212-682-1892
Brian McGovern -   3804                        Fax: 636-532-0857
Christi Mobley -                               Fax: 404-876-4476
Jonathan Moses -                               Fax: 212-403-2000
Klari Neuwelt -                                Fax: 212-593-9131
Edward Nicholson -                             Fax: 404-876-4476
Jeffrey Nobel -                                Fax: 860-493-6290
James Notis -                                  Fax: 212-684-5191
Stephen Oestreich -                            Fax: 212-486-2093
Andrew Ogilvie -                               Fax: 415-861-3151
Ronald Olson -                                 Fax: 213-687-3702
Jonathan Plasse -                              Fax: 212-818-0477
Barbara Podell -                               Fax: 215-923-9353
Michael Pucillo -                              Fax: 561-835-0322
Darryl Rains -                                 Fax: 415-268-7522


Brian Robbins -
SCOTT AND SCOTT, LLC
108 Norwich Avenue
Colchester, CT  06415


Darren Robbins -                               Fax: 619-231-7423
Stephen Rodd -                                 Fax: 212-684-5191
Samuel Rudman -                                Fax: 212-868-1229
Jeffrey Russell -   4232                       Fax: 314-259-2020
Stuart Savett -                                Fax: 215-923-9353
Andrew Schatz -                                Fax: 860-493-6290
Steven Schulman -                              Fax: 212-868-1229
Michael Schwartz -                             Fax: 212-486-2093


David Scott -
SCOTT AND SCOTT, LLC
108 Norwich Avenue
Colchester, CT  06415


Christopher Seefer -                           Fax: 415-288-4534
Barry Short -   4358                           Fax: 314-241-6056
Jeffrey Smith -                                Fax: 212-686-0114
Lee Squitieri -                                Fax: 212-684-5191
Robert Stein -                                 Fax: 312-606-0207
Warren Stern -                                 Fax: 212-403-2000
Joseph Tabacco -                               Fax: 415-433-6382
Curtis Trinko -                                Fax: 212-986-0158
Marie Weiner -                                 Fax: 650-697-0577
Robert Wilson -                                Fax: 618-252-5304
Marc Wolinsky -                                Fax: 212-403-2000

SCANNED & FAXED BY:

SEP 3 0 2002

K·H