UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|   |   |   |
|---|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES LITIGATION, | ) ) ) ) ) | Case No. 4:99-MD-1264-CEJ |

**MEMORANDUM AND ORDER**

This matter is before the Court on the *pro se* motion of David P. Oetting for the issuance or reissuance of several checks to him from the NationsBank classes settlement fund. Responses in opposition have been filed, and the issues are fully briefed.

I. **Background**

The history of this litigation is summarized in *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015), and will not be addressed at length here. The present dispute involves Oetting, the representative of the NationsBank classes; former NationsBank classes counsel and now-defunct law firm Green Jacobson, P.C. and its attorneys; and the claims administrator, Heffler, Radetich & Saitta, LLP (Heffler).

On November 21, 2002, the Court entered a judgment approving a settlement agreement in this case. The judgment provides that class members are:

> **permanently barred and enjoined, absolutely and forever, from suing upon or asserting, directly or indirectly any and all of the Settled Claims against the Defendants, or any of them, or any of the other Released Persons . . . .**

The stipulation, which was incorporated by reference into the judgment, defines the terms "Defendants" and "Released Persons." Neither Green Jacobson or its attorneys nor Heffler or its employees fit either definition. Oetting and others

immediately appealed the judgment, challenging the settlement agreement on various grounds. The Court of Appeals affirmed. *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747 (8th Cir. 2003).

On June 14, 2004, the Court entered an order that contained the following provision:

> **All person involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order . . . .**

Orders containing the same or substantially similar provisions were entered on February 4, 2005, February 22, 2005, and October 4, 2006.

### The First Distribution

After the settlement was affirmed, the Court approved Green Jacobson's selection of Heffler as claims administrator. With some guidance from the Court, Green Jacobson and Heffler began to distribute the NationsBank classes' settlement fund. As part of that first distribution to the class members, Oetting was issued three checks on July 16, 2004, one check for $10,177.72 and two checks for $1,234.02 each. Consistent with the Court's directive, the face of each check (like the checks issued to every other class member) bore the following language:

> **Cash promptly, void and subject to re-distribution 180 days after issue date.**

Attached to the checks issued to Oetting and the other class members was a letter from Green Jacobson. The letter included the following statement (hereinafter, the "exculpatory clause"):

> **The endorsement or deposit of this check is an acknowledgement that the payee has released all persons from all claims in connection with the litigation.**

The exculpatory clause was neither authorized nor approved by the Court.

Oetting states that he was concerned that if he cashed his checks, he would be subject to the exculpatory clause, the effect of which was unknown at the time. Oetting therefore elected not to cash his checks, which were then void 180 days after they were issued.

Over the course of several years, the Court authorized the reissuance of checks totaling over $1 million to a number of class members. After evaluating the requests, the Court found the existence of extenuating circumstances warranting reissuance. The recipients were warned that the reissued checks would be void if not cashed within 90 days.

Oetting did not receive any reissued checks. Indeed, he did not request that his checks be reissued until he filed the instant motion. According to Oetting, he remained concerned about the effect of the exculpatory clause that accompanied the initial checks that were issued.

### The Second Distribution

On June 16, 2008, after money was recovered from a fraud scheme perpetrated by one of Heffler's employees, the Court authorized Heffler to distribute an additional $4.75 million to the NationsBank class members. Only class members who would be entitled to a pro rata share of $100 or more and who "filed valid

3

claims" were eligible to receive the second distribution. Class members were considered to have filed valid claims if (a) they were issued checks during the first distribution and they cashed those checks or (b) they were issued reissued checks from the first distribution and they cashed the reissued checks. The second distribution checks would be void if not cashed within 90 days.

The Court stayed the second distribution order on August 6, 2008, because of ongoing proceedings related to the fraud scheme. The stay was lifted on April 15, 2009, and the second distribution commenced. Because Oetting had not cashed his checks from the first distribution and had not been reissued any checks, he was not issued a second distribution check.

As with the first distribution, some class members either never received or for other reasons failed to timely cash their second distribution checks. The Court authorized reissuance of a number of second distribution checks to persons or entities who demonstrated extenuating circumstances. The Court again provided that reissued checks from the second distribution would be void if not cashed within 90 days.

### The October 22, 2009 Order

Following revelation of the fraud scheme, confusion arose about whether the 2004 order barred class members from pursuing claims against Heffler related to the fraud and other purported mismanagement of the classes' funds. In response to Heffler's argument that the June 2004 order shielded it from all liability, the Court clarified on October 22, 2009 as follows:

> **[T]hose involved in this case are protected from claims arising out of their lawful performance of the duties assigned to them through this Court's orders and through the settlement agreement. Clearly, any unlawful activity would be outside the**

4

**scope of any lawful 'involvement' in the case, and would not be protected by any language in the June 14, 2004 order.**

### The Heffler Case

Oetting urged Green Jacobson to pursue claims against Heffler related to the fraud and potential mismanagement of the NationsBank classes settlement fund. Unsatisfied with Green Jacobson's responses, Oetting moved for the appointment of special counsel to lodge claims against Heffler. That motion was denied. Subsequently, Green Jacobson sought leave to file a supplemental complaint against Heffler to assert claims of breach of fiduciary duty, negligent misrepresentation, and accounting malpractice—claims based in part on the approximately $5.8 million loss the classes allegedly suffered because of the fraud scheme. Leave was denied based on the Court's finding that the new claims were not sufficiently related to the securities claims, and should therefore be brought, if at all, in a separate case.

Green Jacobson did not further pursue the claims against Heffler. Rather, Oetting brought breach of fiduciary duty and accounting malpractice claims against Heffler, among others, in a separate action on behalf of the NationsBank classes. *Oetting v. Heffler, Radetich & Saitta, LLP*, No. 4:11-CV-253-CEJ (E.D. Mo.). That action was later transferred to the Eastern District of Pennsylvania. *Oetting v. Heffler, Radetich & Saitta, LLP*, No. 2:11-CV-4757-JD (E.D. Pa.). In that case, Heffler maintained—and it still maintains—that the June 2004 order and the October 2009 order release it from any liability.

### The 2013 Green Jacobson Case

In June 2013, Oetting initiated a separate action in this Court against Green Jacobson and its shareholder attorneys, purportedly on behalf of the NationsBank

5

classes. *Oetting v. Green Jacobson, P.C.*, No. 4:13-CV-1148-CEJ. Oetting claimed that Green Jacobson and its attorneys committed legal malpractice, breached their fiduciary duties, and "abandoned" the NationsBank classes through their course of conduct related to Heffler, the fraud scheme, and other post-settlement activities. Green Jacobson and its attorneys argued, among other things, that the 2004 order released them from any liability for those claims.

On March 11, 2014, the Court dismissed the action, after determining that Oetting did not have Article III standing because had not cashed his distribution checks. The dismissal was upheld on appeal. *Oetting v. Norton*, 795 F.3d 886 (8th Cir. 2015). The Court of Appeals explained:

> **Oetting and the class seek a new compensatory recovery, not the rewriting of checks he did not cash. . . . But we agree he lacks personal standing because (i) all the damages and disgorged fees being sought would be recovered into the NationsBank class settlement fund in the main action; (ii) the putative class represented in this case, as defined in the complaint, is a subclass of the NationsBank class, namely, those who "have or are to receive a distribution from" the settlement fund; and (iii) the district court's June 14, 2004, and February 4, 2005, orders in the main action expressly provided that further distributions from the settlement fund would be limited to "Authorized Claimants who have cashed their checks." By defining the class in this case as being those who "have or are to receive" distributions from the settlement fund, Oetting excluded himself from the class. As he alleged no injury other than a loss to his share of the settlement fund—which became zero when he did not cash his checks—he failed to allege the elements of Article III standing for a personal claim.**

### The *Cy Pres* Order

Green Jacobson filed a motion for *cy pres* distribution of the NationsBank classes' settlement fund and for attorneys' fees. The motion was opposed by Heffler, who argued that the distribution should be stayed so that funds would be

6

available to satisfy any judgment entered against in the Pennsylvania case. It was Heffler's position that the June 14, 2004 order protected it from liability resulting from the fraudulent acts of its employee. The Court disagreed, reiterating its October 22, 2009 order clarifying that "[t]he 2004 order does not confer upon Heffler any legally protected interest in a declaration of release from liability.

The Court granted the *cy pres* motion, awarded attorneys' fees to Green Jacobson, and terminated the case. Oetting appealed, and the case was reversed and remanded. *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060. As relevant here, the Court of Appeals explained that a *cy pres* award was inappropriate at that juncture because "a further distribution to the class[es] [is] clearly feasible" and class members were entitled to further distributions because they had not been compensated in full. *Id.* at 1065. The Court of Appeals also explained that, with regard to Oetting, "[c]lass members who received but did not cash prior distributions might be included in a further distribution, because attitudes and financial conditions may change over ten years." *Id.* at 1066 n.3.

### II. Legal Standard

Pursuant to Fed. R. Civ. P. 6(b)(1)(B), "[w]hen an act may or must be done within a specified time," the Court "may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." "The determination as to what sort of neglect is considered excusable is an equitable one, taking account of all relevant circumstances surrounding the party's own omission." *Kaubisch v. Weber*, 408 F.3d 540, 543 (8th Cir. 2005) (quotation marks and citation omitted). Excusable neglect "is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Jefferson v.*

7

*Hicks*, 364 F. App'x 281, 283 (8th Cir. 2010) (quotation marks and citation omitted).

In the context of late attempts to share, or re-share, in a class action settlement, the relevant circumstances include the following: "(1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Kurka v. Iowa Cnty.*, 628 F.3d 953, 959 (8th Cir. 2010); *see Tate v. Rest. Techs., Inc.*, No. CIV. 09-2076 MJD/JJG, 2011 WL 3609417, at *5 (D. Minn. July 25, 2011) (applying these factors to a late-filed claim to share in a class action settlement). "These factors do not bear equal weight as the reason for delay is generally a key factor in the analysis." *Kurka*, 628 F.3d at 959 (citation omitted). The Court has previously applied the factors in this case where class members sought to have checks reissued and they were able to demonstrate "extenuating circumstances" that justified reissuance.

### III. <u>Discussion</u>

Oetting filed the instant motion solely on his own behalf on August 14, 2015, seeking to have each of his first distribution checks reissued, but reissued without the exculpatory clause. In response, class counsel Tomlinson states that he does not believe that granting the motion will prejudice the NationBank classes. Opposition to the motion comes from Green Jacobson's bankruptcy trustee and Joe D. Jacobson, a former shareholder of the firm.[1]

---

[1] In 2015, an involuntary bankruptcy proceeding was brought against Green Jacobson. *In re Green Jacobson, P.C.*, No. 15-41404 (Bankr. E.D. Mo.).

The Court believes that Oetting's efforts to protect the interests of the NationsBank classes through multiple legal proceedings constitute extenuating circumstances that warrant reissuance of his first distribution checks. Oetting acted in good faith, attempting to protect the classes' interests, even though some of his efforts were unsuccessful. Oetting's delay in requesting reissuance of the checks has been lengthy, but it was justified. That is because, until now, Oetting has not known the effect of the exculpatory clause, which he was understandably concerned might affect his and the classes' claims in the proceedings relating to this case.

The original defendants to this action will not be prejudiced by reissuing the checks to Oetting. The trustee and Jacobson argue, however, that doing so may permit Oetting to assert new claims against Green Jacobson and its attorneys. That concern is misplaced. As the court of appeals explained, Oetting's "status as class representative would doubtless . . . provide[] standing to represent the class . . . despite his failure to cash prior settlement checks." *Oetting*, 795 F.3d at 890–91. Thus, whether Oetting's checks are reissued has no bearing on claims against Green Jacobson and its attorneys that might be brought in this action. Even if it did, when weighed against the other considerations, especially Oetting's justification for the delay, the Court finds that Oetting has established extenuating circumstances, *i.e.*, excusable neglect. The Court will therefore order Heffler to reissue Oetting his first distribution checks.

Second and by the same token, the reissuance of the first distribution checks, the expiration of which prevented Oetting from sharing in the second distribution, is an extenuating circumstance that warrants issuing Oetting a second

distribution check. The Court will therefore order Heffler to issue Oetting a check for the amount he would have received in the second distribution.

In the hope of clarifying the issue once and for all, the Court will again state that the exculpatory clause does not have—nor could it have—any legal force or effect as applied to Green Jacobson, Heffler, or anyone else not defined as Defendants or Released Persons in the stipulation and settlement agreement incorporated into the judgment. The settlement was only as to claims "in connection with the litigation" against the Defendants and Released Persons. It did not include claims that class members might assert against their own attorneys or the claims administrator. Further, the June 2004 order and the October 2009 order were not intended to, and they do not, release Heffler (or its employees or agents) from liability for any claims that have ever been brought against it or that are presently pending against it. Indeed, at the time of the June 2004 order the fraud scheme had not been exposed and could not have been contemplated by the order.

Oetting concedes that the Court "could order the reissuance of the checks with the same exculpatory language." As the opponents point out, issuing checks without letters containing the exculpatory clause might "give Oetting a different status than the thousands of other members who cashed their settlement checks years ago subject to the exculpatory clause." Therefore, the Court will honor Oetting's alternative request to reissue and issue checks with the same letter that the other class members received. Doing so, however, does not evince the Court's approval or endorsement of the exculpatory clause.

***

The Court finds that Oetting has presented extenuating circumstances warranting reissuance of his first distribution checks and issuance of a second distribution check. All such checks will be void if not cashed within 90 days of issuance. The Court also finds that Oetting has not shown good cause to have those checks issued without the same letter that was attached to his previous checks.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of class member David P. Oetting to re-issue first distribution settlement checks and to issue a second distribution settlement check [Doc. #859] is **granted**.

**IT IS FURTHER ORDERED** that David P. Oetting shall return all previously-issued checks to Heffler, Radetich & Saitta, LLP.

**IT IS FURTHER ORDERED** that, upon receipt of the previously-issued checks, Heffler, Radetich & Saitta, LLP shall re-issue three checks to NationsBank class member David P. Oetting as follows:

Check number 159956 for $1,234.02 on claim number 102360;

Check number 159957 for $1,234.02 on claim number 102361; and

Check number 159958 for $10,177.72 on claim number 102362.

**IT IS FURTHER ORDERED** that Heffler, Radetich & Saitta, LLP shall calculate the pro rata share of the NationsBank classes settlement fund that David P. Oetting would have been entitled to receive in the second distribution of June 16, 2008, if he had cashed his checks from the first distribution and shall issue one check to NationsBank class member David P. Oetting in that amount.

**IT IS FURTHER ORDERED** that all checks issued pursuant to this order shall become void if not cashed within ninety (90) days from the date of issuance,

and shall bear the following notation: **"CASH PROMPTLY, VOID IF NOT CASHED WITHIN 90 DAYS FROM DATE ISSUED"**.

**IT IS FURTHER ORDERED** that the same letter that was attached to checks previously issued to David P. Oetting shall be attached to all checks issued pursuant to this Order.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2017.