UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES LITIGATION, | ) ) ) ) ) | Case No. 4:99 MD 1264 CDP |

# MEMORANDUM AND ORDER

This case is before the Court on the motion of Abbey Spanier, LLP, as Lead Counsel for the BankAmerica Classes, to distribute surplus settlement funds in the approximate amount of $9,590 under the doctrine of *cy pres*, to terminate this class action with respect to the BankAmerica Classes, and to relieve both the Claims Administrator and Lead Counsel for the BankAmerica Classes of further duties and responsibilities. No objections to the motion have been filed. For the reasons stated below, I will grant this motion.

## Background

This litigation began as a class action under the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4. Plaintiffs alleged losses from misrepresentations in the prospectus and proxy materials provided to shareholders during the 1998 merger of NationsBank and BankAmerica. The cases were transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Missouri. Four plaintiff classes were certified: two classes of NationsBank

shareholders and two classes of BankAmerica shareholders. The cases were resolved with a global settlement agreement for $490 million which was approved by the district court in 2002 and affirmed by the court of appeals in 2003. ECF Nos. 571, 602. Two settlement funds were established – one for each of the two sets of classes – with the BankAmerica Classes receiving approximately $156.8 million ("Settlement Fund"). As part of the settlement, Bank of America disclaimed any interest in the Settlement Fund such that any remaining money after distribution to class members would not revert back to it.

In May 2015, after three rounds of distribution of money from the Settlement Fund, the Court issued an order for a final distribution to eligible class members of the $1,027,814 remaining. ECF No. 841. The May 2015 Order required the payment of certain attorneys' fees and expenses of Lead Counsel, and the reservation of $30,000 for fees and expenses payable to the Claims Administrator, Heffler Claims Group LLC, a division of Heffler, Radetich & Saitta, LLP. After those payments, the remainder of the $1,027,814 in the Settlement Fund would be distributed in one or two final payments to those BankAmerica class members who had cashed checks from the prior distribution in 2009. The Court also retained jurisdiction over the action to consider other matters that might arise, including the *cy pres* distribution of any money remaining in the Fund after the final distributions were complete.

Pursuant to the May 2015 Order, Claims Administrator Heffler made two more distributions to BankAmerica class members and the Fund now contains approximately $9,590.52 from uncashed and refunded checks. Lead Counsel seeks a *cy pres* distribution of the remaining amount in the Fund.

## **The Eighth Circuit on *Cy Pres* Distributions**

The Eighth Circuit Court of Appeals clarified the legal principles concerning *cy pres* distributions in a 2015 ruling that involved the NationsBank Classes in this case. *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015). In vacating a *cy pres* distribution of approximately $2.4 million in residual settlement funds from the NationsBank Fund, the appellate court discussed with approval the American Law Institute's Cy Pres criteria:

> A court may approve a settlement that proposes a cy pres remedy …. The court must apply the following criteria in determining whether a cy pres award is appropriate:
>
> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.
>
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

(c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests pursued by the class.

*Id.* at 1063-64 (*quoting* Principles of the Law of Aggregate Litigation § 3.07 (2010)).

Based on the ALI criteria and court precedent, the Eighth Circuit established the following principles for application in *cy pres* cases: (1) a *cy pres* distribution to a third party is only permissible when it is not feasible to make further distributions to class members based on the administrative costs of such a distribution; (2) it is not sufficient to declare all class members "satisfied in full" or "fully compensated" in order to authorize a *cy pres* distribution; (3) language in a settlement agreement ordering that a *cy pres* distribution be made in the district court's "sole discretion"[1] is void and cannot be the basis for awarding such a distribution; (4) when the amount of funds to de distributed *cy pres* is not *de minimis*, the district court should make a *cy pres* proposal publicly available and

---

[1] In a June 2004 Order in this case which provided guidance on settlement distribution after approval of the settlement terms, the Court specified that after multiple distributions the remaining "balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) as determined by the Court in its sole discretion." ECF No. 630 at 3. The Eighth Circuit ruled that this Order "improperly went further" than the settlement agreement which only "*permitted* distribution of remaining funds to charities at the court's sole discretion." *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d at 1066 n.5.

– 4 –

allow class member input; and (5) if a district court applies the *cy pres* standards and concludes that a distribution is appropriate, the "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* at 1064-1067 (internal citations omitted).

## Discussion

Lead counsel for the BankAmerica Classes now argues that further distribution of the Settlement Fund is economically infeasible because the remaining amount of $9,590.52 is less than the cost to execute a sixth distribution to class members. The aggregate administrative cost of the last two distributions was $30,000. Given that over $127 million has already been distributed to class members in five separate distributions, Lead Counsel argues that the remaining amount – which is less than .008 percent of the amount already distributed to class members – is *de minimus*.

Evidence submitted by Heffler demonstrates the extensive methods used to maximize the number of BankAmerica class members receiving settlement money on each distribution, including follow-letters and phone calls. *See* ECF No. 943-2 ¶¶ 2-9. The five completed distributions of the Settlement Fund have been comprehensive. The Court also acknowledges that the Fund was established over a decade ago and class members have become harder to locate. *See Powell v.*

*Georgia-Pacific Corp.*, 119 F.3d 703, 706 (8th Cir. 1997) (Court noted when approving a *cy pres* distribution that "[o]ver a decade has elapsed since the initial distribution, and many class members have probably relocated."). Because the amount remaining in the Settlement Fund is less than the administrative cost estimate of $15,000 per distribution, it is not feasible to attempt another distribution to class members. The remaining amount is not "sufficiently large" but instead "too small" to make individual distributions economically viable. *See* ALI § 3.07(a), (b). Therefore, a *cy pres* distribution of the residual Settlement Fund is appropriate.

The proper *cy pres* recipient of the residual amount must now be determined. According to the Eighth Circuit, this "next best" recipient of unclaimed funds must have "interests reasonably approximate [to] those being pursued by the class." *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d at 1067; ALI § 3.07(c). This Court "must carefully weigh all considerations, including the geographic scope of the underlying litigation, and make a 'thorough investigation' to determine whether a recipient can be found that most closely approximates the interests of the class." *Id.* (internal citations omitted).

In this securities fraud case, "non-profit organizations devoted to preventing and aiding the victims of securities fraud … must be thoroughly explored" before accepting a "totally unrelated charity" as a "next best" recipient. *Id.* at 1067. Lead

Counsel states that it has been impossible to find a non-profit organization of national scope that is primarily devoted to securities fraud prevention or compensation to defrauded shareholders. *See* ECF No. 943 ¶ 8. Lead Counsel did research the "Fair Funds" SEC program authorized by the Sarbanes-Oxley Act of 2002 ("SOX"), 15 U.S.C. § 7246, that was suggested by the Eighth Circuit as a possible *cy pres* recipient in this case. *See In re BankAmerica Corp. Sec. Litig.*, 775 F.3d at 1067. However, Lead Counsel argues the the Fair Funds program is not a feasible or appropriate recipient here.

According to the research done by Lead Counsel, a Fair Fund may be created in a specific SEC enforcement action where disgorgement and/or civil penalties are obtained by the SEC for a violation of securities law. SOX § 7246; SEC Rules on Fair Fund and Disgorgement Plans, 17 CFR 201.1100 *et seq*. The Fair Fund money for that specific proceeding is distributed to the victims of the violation that was the subject of the enforcement action. Under SEC rules, if the cost of distributing the Fair Fund to victims is too costly or the number of victims too small, the Fair Fund money goes to the general fund of the United States Treasury. ECF No. 943 ¶ 11.

Lead Counsel contends that the Fair Funds is not an appropriate *cy pres* recipient because the cost of another distribution is too great and because a Fair Fund is only intended to compensate victims of the specific conduct alleged in the

corresponding SEC enforcement action. In this case, there was no related SEC enforcement action in connection with the merger of NationsBank and BankAmerica. After substantial research and inquiry, Lead Counsel was unable to find a Fair Fund established for either any purpose other than the specific conduct that was the subject of an SEC enforcement action, or any Fund where settlement funds from an unrelated securities class action were combined with disgorgement or penalty funds obtained for distribution under the Fair Funds statute. ECF No. 943 ¶ 11. Given that there is no currently-established Fair Fund to compensate the victims of the alleged securities fraud of this case, that there is no precedent for creating a new Fair Fund under these circumstances, that another distribution is cost-prohibitive, and that establishment of a Fair Fund could have the unintended result of benefiting the U.S. Treasury, I agree with Lead Counsel that the Fair Funds program is not an appropriate *cy pres* recipient.

Instead, Lead Counsel suggests a *cy pres* distribution of the residual Settlement Fund in equal parts to two public legal services organizations: Legal Services of Eastern Missouri and the Kathryn A. McDonald Education Advocacy Project of the Legal Aid Society of New York. These organizations provide legal representation, assistance, information, and education to those most in need, including protection against fraud and deception. No opposition to Lead Counsel's

Motion for *Cy Pres* distribution to these two parties has been filed, and no other possible *cy pres* recipients have been suggested to the Court.

The Court acknowledges that the Eighth Circuit found Legal Services of Eastern Missouri to not qualify as a "next best" recipient in *In re BankAmerica Corp. Sec. Litig.*; however, the circumstances are different here. 775 F.3d at 1067. First, Legal Counsel has thoroughly explored all alternative recipients, including the SEC Fair Funds program, and no viable recipients have been found. Second, further search for more closely-related recipients is uneconomical given the small amount of residual funds here. Third, an equal distribution of the funds to two different public legal service organizations in both Missouri and New York accommodates the "geographic scope of the underlying litigation." *Id.; See also In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002) (court must consider the "full geographic scope of the case" in determining recipient). Therefore, I find that these two recipients' interests reasonably approximate those interests being pursued by the class in this case. *See also In re Citigroup Inc. Sec. Litig.*, 199 F.Supp.3d 845,852 (S.D. N.Y. 2016) (approving legal services organization as a *cy pres* recipient in securities fraud class action based on ALI's "reasonably approximate" recipient test). Because these two legal aid organizations protect the public from fraud and deception, their "purposes [are]

consistent with the nature of the underlying action" and they are appropriate *cy pres* recipients. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017).

## Conclusion

Unlike the *cy pres* distribution vacated by the Eighth Circuit in *In re BankAmerica Corp. Sec. Litig.*, the remaining amount of the Settlement Fund in this case is *de minimus* and further distribution to individual class members would require more in administrative costs than the Fund contains. After a thorough investigation by Lead Counsel, I agree that Legal Services of Eastern Missouri and the Kathryn A. McDonald Education Advocacy Project of the Legal Aid Society of New York are appropriate "next best" *cy pres* recipients here. The remaining balance in the BankAmerica Classes Settlement Fund shall be distributed in equal amounts to these two organizations. After distribution, the BankAmerica Settlement Fund account shall be closed. Lead Counsel and Claims Administrator shall be relieved of their duties to the BankAmerica Classes.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion of BankAmerica Classes for *Cy Pres* Distribution [#942] is **GRANTED**. The $9,590.52 balance remaining in the BankAmerica Classes Settlement Fund, and any interest that may be earned or accrued thereon to the date of distribution, shall be distributed in equal amounts to the following non-secular 501(c)(3) non-profit organizations:

(a) Legal Services of Eastern Missouri; and

(b) The Kathryn A. McDonald Education Advocacy Project of the Legal Aid Society of New York.

**IT IS FURTHER ORDERED** that when the *cy pres* distribution is completed, Heffler shall close the BankAmerica Fund account. Heffler, as Claims Administrator, and Abbey Spanier, LLP, as Lead Counsel for the BankAmerica Classes, shall be relieved of further duties and responsibilities with regard to the BankAmerica Classes.

**IT IS FINALLY ORDERED** that this Court retains jurisdiction over the BankAmerica Classes' claims and settlement only for the purposes of considering any further application or matter which may arise in connection with the administration and/or execution of this Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of February, 2018.