UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE BANKAMERICA CORP. SECURITIES LITIGATION, | ) ) ) ) ) | Case No. 4:99 MD 1264 CDP |

# MEMORANDUM AND ORDER

NationsBank class representative David P. Oetting moves for Class Counsel to forfeit and disgorge the nearly $59 million in attorneys' fees that were awarded in this securities class action in 2002 and, further, asks that I redetermine the fee award at an amount equal to the lodestar calculation, that is, $20,188,345,75. Oetting also asks that a vacated award of $98,114.34 in post-settlement fees incurred by former Lead Counsel, the now-defunct law firm of Green Jacobson, P.C., not be reinstated. Because the doctrine of laches bars Oetting's claim for Class Counsel to forfeit and disgorge the 2002 award of attorneys' fees, and the fees incurred by Green Jacobson post-settlement are reasonable and presently compensable, I will deny Oetting's motion.

## Background

The history of this litigation has been thoroughly summarized in several court opinions, including *In re BankAmerica Corp. Sec. Litig.*, 350 F.2d 747 (8th Cir. 2003); *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015);

and *In re Green Jacobson, P.C.*, 911 F.3d 924 (8th Cir. 2018), and will not be repeated here except where necessary to resolve the current motion.

The issue now before the Court is whether the class is entitled to a partial refund of attorneys' fees. When the underlying multi-district class action settled in 2002, the Court at that time approved an award of attorneys' fees to Class Counsel that equaled 18% of the net settlement fund for each respective class.[1] For the NationsBank classes, the net settlement fund (Fund) was $326,841,246.48, which resulted in a $58,831,424.38 award of attorneys' fees to Class Counsel. Lead Counsel for the NationsBank classes, the law firm of Green Schaaf & Jacobson, P.C.,[2] was charged with the duty of distributing the fee award to other Class Counsel who participated in the case. The other law firms participating as either Co-Lead Counsel or as an Executive Committee Member for the NationsBank classes were Chitworth & Hartley, Stull Stull & Brody, Entwistle & Cappucci

---

[1] Class Counsel originally requested an award equaling 25% of the net settlement fund. Oetting raised no objection regarding this request for fees either in amount or in the method of its calculation. (*See* ECF 575, p. 5 n.6.) Indeed, at the fee hearing held on May 31, 2002, Oetting explicitly told the Court that he did not object to the fee request, stating that "NationsBank lead counsel did a good job with the case for three and a half years." (ECF 549 at p. 29.) Oetting's only objection was to the manner by which the settlement agreement itself was reached, and specifically, that it was reached without his consent or the consent of two other class representatives. Oetting stated that this occurrence was not on account of any rule violation but rather because there was a "disconnect between what happened and what we thought should happen[.]" (*Id.* at p. 32.)

[2] Green Schaaf & Jacobson, P.C., is the predecessor to Green Jacobson, P.C., the law firm whose fees are at issue in this motion. For ease of reference and clarity, I will refer to this firm only as "Green Jacobson" in this opinion.

LLP, and Wolf Haldenstein Adler Freeman & Herz LLP.[3]

The first distribution from the Fund to the NationsBank class members began in July 2004. In June 2008, the Court authorized a second distribution to NationsBank class members, but that distribution was stayed in August 2008. The Court lifted the stay in April 2009 and ordered the second distribution to begin under the terms of the June 2008 Order. Under the terms of the settlement agreement itself, the Court was permitted in its discretion to contribute to non-sectarian, not-for-profit organizations all unclaimed settlement funds that remained in the Fund after distribution was completed. (ECF 588 at header p. 37.)

In September 2012, after three-and-a-half years of additional proceedings – which included motions and orders regarding the reissuance of distribution checks, the filing of several status reports, litigating the filing of a supplemental complaint, and addressing several *pro se* filings made by Oetting – Lead Counsel Green Jacobson moved for *cy pres* distribution of the nearly $3 million that remained in the NationsBank Fund and to terminate the case with respect to the NationsBank classes. Green Jacobson also moved for an award of post-settlement attorneys' fees in the lodestar amount of $97,790.00, representing work performed from December 1, 2004, to April 3, 2012. With $324.34 in expenses, Green Jacobson

---

[3] Disputes arose between the Class Counsel law firms regarding their respective allocation of attorneys' fees. Those disputes were finally resolved in November 2004.

sought a total award of $98,114.34. Oetting objected to the motion *in toto* and to the fee request in particular, asserting that Green Jacobson did not earn these supplemental fees. The Court granted Green Jacobson's motion in June 2013, ordered *cy pres* distribution of the remaining Fund, and awarded Green Jacobson $98,114.34 in fees and expenses. (ECF 802.) In January 2015, the Eighth Circuit vacated the *cy pres* distribution and likewise vacated the attorneys' fee award given that, without *cy pres* distribution, money from the Fund remained to be distributed to class members thereby rendering the award of supplemental fees premature.[4] The *cy pres* and attorneys' fee/expense monies have since been returned to the NationsBank Fund.

In March 2015, shortly after mandate issued on the Eighth Circuit's decision, Green Jacobson entered into bankruptcy, which was triggered by an unrelated state-court malpractice judgment. The Court thereafter removed Green Jacobson as Lead Counsel for the NationsBank classes and appointed Frank H. Tomlinson as Lead Counsel.

In August 2019, NationsBank class representative Oetting filed the motion now under consideration, requesting that I redetermine the amount of attorneys' fees to be awarded in this case, *in toto*. Specifically, Oetting requests that I order all Class Counsel to forfeit and disgorge the $58,831,424.38 in fees that were

---

[4] *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015).

awarded back in 2002 and, further, that I make a determination that fees equal to the lodestar amount calculated in 2002 – that is, $20,188,345.75 – are fair and reasonable in the circumstances of this case. Oetting contends that Class Counsel is entitled to no fee other than these lodestar fees. The bankruptcy trustee for the Green Jacobson law firm opposes the motion as do the law firms of Chitworth & Hartley, Stull Stull & Brody, Entwistle & Cappucci LLP, and Wolf Haldenstein Adler Freeman & Herz LLP. Individual attorneys Martin M. Green and Joe D. Jacobson likewise oppose the motion.[5]

## Discussion

In class action litigation, a district court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court has an affirmative duty to assure that the award of attorneys' fees is fair and proper. *In re Green Jacobson, P.C.*, 911 F.3d at 930. Where class lawyers recover a common fund for the benefit of all members of the class, they are entitled to a "reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Federal courts award attorneys' fees under this "common fund doctrine" as a matter of federal common

---

[5] As recognized by several of the respondents, the practical effect of Oetting's motion, if successful, would be disgorgement of approximately $38 million, which represents only those fees that exceed the lodestar amount. Nevertheless, Oetting asks that the entire $58.9 million award be disgorged and that I redetermine the reasonableness of fees, with the suggestion that the lodestar fee is reasonable.

law, based on "the historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 164 (1939). The guiding principle is that attorneys' fees "be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). This guiding principle of reasonableness is applied "even more assiduously in common fund class action cases . . . because the district court has a special duty to protect the interests of the class[.]" *Id.* at 655 (internal quotation marks and citations omitted).

Given its duty to protect the class, a federal court's equitable power regarding attorneys' fees in a class action may include a determination whether attorneys' fees previously awarded by the court should be disgorged. *See In re Green Jacobson, P.C.*, 911 F.3d at 930. A class member's claim for disgorgement, however, may be barred by equitable defenses such as laches or preclusion principles. *Id.*

Disgorgement of 2002 Award of Attorneys' Fees

As an initial matter, I note that Oetting requests that *all* Class Counsel be ordered to disgorge their respective share of attorneys' fees awarded by the Court in 2002. To the extent Oetting requests that firms other than Green Jacobson forfeit and disgorge their fees, Oetting neither alleges nor shows that these firms engaged in any of the purported misconduct in administering the Fund, which Oetting claims justifies the disgorgement. Indeed, the approved settlement

agreement itself designates only Lead Counsel (Green Jacobson) and the claims administrator as those responsible for the administration of and disbursements from the NationsBank Fund. (ECF 588 at header p. 27.) On its face, therefore, ordering the non-Green Jacobson law firms to disgorge their fees for the reasons asserted by Oetting would be inequitable. *See In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 534 (3d Cir. 1982) ("[N]either attorney discipline nor deterrence of future misconduct . . . would justify disgorgement of fees earned pursuant to ethical conduct."). *See also Rodriguez*, 688 F.3d at 653-56, 660 (and cases cited therein) (disgorgement of fees appropriate when lawyer's misconduct and clear violation of ethical rules makes him undeserving of such compensation).

Regardless, the doctrine of laches bars Oetting's claim for disgorgement.

A claim for equitable relief is barred by the doctrine of laches if it is shown that the party seeking relief was guilty of unreasonable and inexcusable delay in bringing the claim and that the respondent would be prejudiced as a result. *Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 277 (8th Cir. 2004). "The doctrine of laches is premised upon . . . the desire to avoid unfairness that can result from the prosecution of stale claims." *Id.* (internal quotation marks and citation omitted). Here, Oetting has provided no reasonable excuse for his unreasonable delay in seeking the particular equitable relief outlined in his motion. Further, because granting the relief sought by Oetting would result in undue

prejudice to the respondents, I conclude that the laches doctrine bars Oetting's equitable claim for disgorgement.

I first look at Oetting's inexcusable delay. Oetting bases his claim for disgorgement on Green Jacobson's alleged failure to properly administer the class settlement by: 1) failing to supervise the claims administrator's activities, which resulted in $5,879,073.36 being fraudulently obtained from the NationsBank Fund, thereby reducing the distributions paid to class members; 2) requesting the Court in 2008 to make a final distribution in an amount nearly $3 million less than what remained in the Fund; and 3) requesting the Court in 2012 to make a *cy pres* distribution of the $2.7 million that remained in the Fund. Oetting also contends that Green Jacobson took action hostile to the NationsBank classes by: 1) including unauthorized exculpatory clauses in letters accompanying the initial July 2004 distributions; 2) failing to properly and timely pursue action against the claims administrator to recoup the $5.8 million lost to fraud; 3) failing to make any effort to recover the stolen monies; and 4) filing for bankruptcy before the case was completed.

With respect to the $5.8 million lost to fraud, the record shows that the United States Attorney for the District of Pennsylvania issued a press release in November 2008 announcing the indictment of the perpetrators for this and other

fraudulent conduct.[6] Green Jacobson reported to the Court in September 2009 that the fraudulent claims paid from the NationsBank Fund totaled $5,879,073.36. (ECF 720.) Oetting thus knew as early as 2009 (if not before) of Lead Counsel's alleged failure to properly supervise the claims administrator's activities that purportedly led to the more than $5.8 million in fraudulent disbursements. As to the other alleged occurrences giving rise to Oetting's claim for disgorgement, Oetting's own summary shows his early knowledge of Lead Counsel's alleged missteps: the letter accompanying the disbursement in 2004; the 2008 request for final distribution; the supplemental complaint against the claims administrator being stricken in 2010; and the 2012 request for *cy pres* distribution. But Oetting waited until August 2019 – some seven to fifteen years after knowing of these events – to seek disgorgement of the 2002 attorney-fee award in its entirety against all Class Counsel on the basis of Lead Counsel's alleged misconduct. That there was significant delay in seeking such equitable relief on this basis cannot seriously be disputed.

Further, the information before the Court shows that Oetting's delay was inexcusable. Oetting earlier argued in this action that Green Johnson should disgorge approximately $2.1 million of its earlier-awarded fees because such

---

[6] One such perpetrator was an employee of Heffler, Radetich & Saitta, LLP, the claims administrator in this case.

portion was attributable to monies that class members will never receive. (*See* ECF 790.) But not until he filed the instant motion in August 2019 did Oetting ever assert that *all* Class Counsel, and not just Green Jacobson as Lead Counsel, should forfeit and disgorge their fees. Although Oetting argues that all Class Counsel are liable as co-counsel for the alleged breaches of fiduciary duty, this is the first time he raised such a claim against the non-Green Jacobson law firms. He gives no reason for failing to earlier seek relief on any basis against these firms. And, given that seventeen years have passed since the initial award of attorneys' fees with no mention of alleged wrongdoing against these firms or any indication that their fees were in jeopardy, the prejudice to these firms if I were to order disgorgement is apparent. With the undue passage of time, memories have faded, documentary evidence is no longer available, lawyers who originally worked on the case are no longer with the affected firms (either through death, retirement, or relocation), and recoupment of the fees for disgorgement and the related taxes paid on their recovery would be beyond arduous if not impossible.

I am aware that Oetting did not wait until August 2019 to seek disgorgement from Green Jacobson. As noted above, in 2012 he first argued in this action that Green Jacobson should disgorge $2.1 million of the 2002 attorney-fee award based on an 18% calculation of monies not distributed to the class members. (ECF 790.)[7]

---

[7] In *In re Green Jacobson, P.C.*, the Eighth Circuit stated in a footnote that Oetting challenged

In June 2013, he filed a separate action against Green Jacobson and its attorneys seeking disgorgement of the entire $60 million fee award. *See Oetting* v. *Green Jacobson, P.C., et al.*, Case No. 4:13CV1148 SNLJ (E.D. Mo.). That case was dismissed for lack of subject-matter jurisdiction. *Id.* at ECF 21 (Memo. & Order). In an August 2015 opinion affirming the district court's dismissal, the Eighth Circuit held that the appropriate forum within which to seek such relief is *this* main class action, 4:99MD1264, and not a separate case. *Oetting v. Norton*, 795 F.3d 886, 890 (8th Cir. 2015).

Notably, when the Eighth Circuit rendered that decision in August 2015, Green Jacobson was already in bankruptcy. With an automatic stay presumably in effect, Oetting's failure to pursue a claim against Green Jacobson in this class action *at that time* for disgorgement of fees could be considered excusable. But nothing prevented Oetting from pursuing the claim in this action *before* Green Jacobson entered into bankruptcy. His improvident filing of a separate cause of

---

the district court's initial award of attorneys' fees on appeal of the court's approval of the settlement agreement. *See* 911 F.3d at 930 n.2. But the record shows that Oetting challenged only the court's approval of the core settlement agreement, claiming that it could not do so over the objection of a lead plaintiff. Indeed, in *Koehler v. Brody*, 483 F.3d 590 (8th Cir. 2007), a separate but related case, the Eighth Circuit recognized that the district court's initial order awarding attorneys' fees in this class action was "unappealed." *Id.* at 598. Notably, the Eighth Circuit held that Koehler, who was a NationsBank class representative and lead plaintiff in this action, could not attempt to "divest the attorneys of their court awarded fees" given that he could not "establish that [counsel] breached duties owed him and caused him an injury without 'relitigating an issue already decided in the federal courts.'" *Id.* at 599 (quoting *Thomas v. Powell*, 247 F.3d 260, 265 (D.C. Cir. 2001)). It appears that that is what Oetting is trying to do here given that he is seeking to disgorge the *initial* fee award in its entirety.

- 11 -

action that was subject to dismissal upon its filing because of lack of jurisdiction did not serve to toll or otherwise excuse his failure to properly seek relief in this action. Given that Oetting himself is a lawyer, I will not accept that ignorance of the law excused his failure to act here.

Moreover, I note that Oetting *did* file a claim in the bankruptcy proceeding for disgorgement of fees, but the claim was nowhere near the claim he now raises here. Oetting's claim in the bankruptcy case asserted that Green Jacobson was liable to the NationsBank class for $10,503,914.70 based on Green Jacobson's alleged misconduct in this class action. Of that $10,503,914.70, Oetting asserted that $1,890,704.65 represented the amount of attorneys' fees that Green Jacobson should disgorge for its alleged misconduct. The remainder of the claim was for the amount of net settlement monies that Oetting alleged had been wrongfully distributed from the Fund over time. *See In re Green Jacobson P.C.*, Case No. 15-41404 (Bankr. E.D. Mo.) (Claim 1). Although Oetting amended this claim in October 2015, he did not amend the amount of attorneys' fees he claimed should be disgorged. The bankruptcy court disallowed Oetting's claim in its entirety on November 29, 2016, and the Eighth Circuit affirmed in December 2018. *In re Green Jacobson, P.C.*, 911 F.3d 924 (8th Cir. 2018), *reh'g denied* (Feb. 6, 2019).[8]

---

[8] In its opinion, the Eighth Circuit construed the bankruptcy court's November 2016 order to have lifted the automatic stay. *In re Green Jacobson, P.C.*, 911 F.3d at 931.

In its December 2018 opinion, the Eighth Circuit observed that the issue of disgorgement of attorneys' fees was a matter for the district court to determine in *this* action. 911 F.3d at 930. Accordingly, in January 2019, Oetting asked me to set a briefing schedule to address whether the award of attorneys' fees made in 2002 should be reduced, as well as several other issues. It is not clear why Oetting needed a briefing schedule in place before filing his motion to disgorge but, regardless, I ordered that any motion for disgorgement of attorneys' fees was to be filed not later than August 20. On August 20, 2019, Oetting filed this motion to disgorge the entire 2002 award of attorneys' fees based on conduct dating back to 2004.

Oetting provides no excuse for his delay in bringing this motion other than Green Jacobson's alleged misconduct and the automatic bankruptcy stay that went into effect in March 2015. While Green Jacobson's alleged misconduct is the basis for the relief requested in Oetting's motion, there is nothing by this conduct that excuses Oetting's failure to bring this motion until several years after the alleged misconduct occurred, especially given Oetting's knowledge of the relevant events as they happened. Further, as noted above, nothing prevented Oetting from seeking relief in this action prior to Green Jacobson entering bankruptcy in March 2015, especially since Oetting bases his current claim for relief on conduct that occurred between 2004 and 2012. I find Oetting's delay in bringing this motion

seeking complete disgorgement of the 2002 fee award inexcusable.

And prejudice to the Green Jacobson bankruptcy estate as well as to other Green Jacobson creditors who are not parties to this action would be insurmountable if I were to grant the requested disgorgement. The nature and course of the bankruptcy proceedings, including distributions and court action, were driven significantly by the $10 million claim Oetting filed in the bankruptcy case, as described above, which sought disgorgement of $1.89 million in fees. As averred by the trustee, if I order the full $58.9 million disgorgement as Oetting now requests, creditors already paid from the bankruptcy estate on their approved claims will have been overpaid by hundreds of thousands of dollars in the aggregate. This in turn would likely result in additional litigation, potential claims to creditors to return monies to the estate, and further delay in the bankruptcy case and even more delay in completing distribution to class members in this action. The level of potential prejudice cannot be understated.

Accordingly, because Oetting is guilty of unreasonable and inexcusable delay in bringing the instant motion for disgorgement of the 2002 award of attorneys' fees, and respondents would be prejudiced as a result, equity demands that Oetting's claim for such disgorgement be barred by the doctrine of laches. I will therefore deny the claim under the doctrine of laches and not consider the merits of the claim.

Reinstatement of Supplemental Fee Award

The approved settlement agreement provided that "NationsBank Class Counsel reserve the right to apply to the Court for . . . fees and expenses incurred in connection with the final distribution of the Net NationsBank Settlement Fund." (ECF 588 at header p. 28.) In September 2012, Lead Counsel Green Jacobson did just that and applied for fees and expenses incurred between December 2004 and April 2012 in connection with final distribution of the Fund.

In awarding the requested fees and expenses, the Court determined that Lead Counsel was entitled to a reasonable supplemental fee because "[t]he complexities of this case were unforeseeable at that time, and it would be unjust to deny lead counsel recompense for nearly a decade of additional effort and involvement in this case." (ECF 802 at p. 10.) The Court noted that counsel's detailed involvement from 2004 to 2012 included "interact[ion] with institutional investors that failed to submit claims on behalf of the beneficial owners of the stock, investigat[ion] of two fraudulent schemes targeting this class action, and submitt[ing] regular status reports to the Court." (*Id.* at pp. 10-11.) The Court overruled Oetting's objection to the requested fees as well as his demand that Lead Counsel disgorge approximately $2 million of the fees paid in 2002 as a penalty for abandoning the class. The Court found that "counsel's move to terminate this case, which settled a decade ago, does not constitute abandonment. Lead counsel

have continued to represent the class through a minefield of unforeseen complications." (*Id.* at p. 11.)[9] The Court therefore found that the lodestar fee and expenses totaling $98,114.34 was appropriate. For the reasons articulated by the Court then, this award continues to be reasonable and appropriate.

Although the Eighth Circuit found the award of supplemental fees to be premature given that there remain settlement monies in the Fund subject to distribution, *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d at 1068, the circumstances are such that reinstatement of the award at this time is just. All of the supplemental fees and expenses were incurred before Lead Counsel moved to close the case in September 2012 and did not include fees for work performed on the *cy pres* award that was later reversed by the Eighth Circuit. Indeed, Green Jacobson sought fees for only that work performed through April 3, 2012. (ECF 777-1.) Because Green Jacobson had fully earned the supplemental fees at that point, reduction in fees for counsel's later suggestion of a *cy pres* distribution – for which it sought no fees – is not warranted.

The Green Jacobson law firm discontinued its practice of law on December 31, 2014 (*see* ECF 842), has not represented the NationsBank classes since that time, and therefore cannot incur any additional fees in connection with the final

---

[9] In her dissent in *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015), Judge Murphy details some of the unforeseen complexities and complications that occurred post-settlement. *Id.* at 1069 (Murphy, J., dissenting).

distribution of the NationsBank Fund or engage in conduct that could justify a decrease in the award. The supplemental fee award of $98,114.34 is therefore finite. Given its fixed nature, there is no reason to delay this award until distribution of Fund monies to the class members is complete. I will therefore order that the supplemental fee award of $98,114.34 be reinstated to Green Jacobson, with interest accrued thereon.

### Conclusion

The doctrine of laches bars NationsBank class representative David P. Oetting's motion for Class Counsel to forfeit and disgorge the nearly $59 million in attorneys' fees that were awarded in this securities class action in 2002. I will therefore not redetermine the reasonableness of the attorneys' fees initially awarded in 2002 and indeed am precluded from doing so given that the reasonableness of that fee has already been litigated and decided. I will reinstate the supplemental fee award of $98,114.34 to Green Jacobson, P.C., given that such fees are reasonable and presently compensable.

Accordingly,

**IT IS HEREBY ORDERED** that David P. Oetting's motion for redetermination of attorneys' fees [992] is denied in its entirety as being barred by the doctrine of laches.

**IT IS FURTHER ORDERED** that the award of $98,114.34 to Green

Jacobson, P.C., for supplemental attorneys' fees and expenses is reinstated. Not later than **Wednesday, November 20, 2019**, David A. Sosne, Chapter 7 bankruptcy trustee for the estate of Green Jacobson, P.C., and intervenor herein, shall submit to the Court a proposed Order of Disbursement from the Registry of this Court providing for the appropriate disbursement of $98,114.34 in attorneys' fees and expenses plus interest accrued thereon. Given my determination as to the appropriateness of the fee, my authority to order disbursement from the Court's Registry, and my ability to independently determine an appropriate Order of Disbursement, no briefing on the trustee's proposed order is allowed.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2019.