UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE BANKAMERICA CORP. | ) | |
| SECURITIES LITIGATION, | ) | Case No. 4:99 MD 1264 CDP |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Class Counsel Frank H. Tomlinson moves for final distribution of the Net NationsBank Settlement Fund, requesting that its current balance and any future deposits be distributed to a *cy pres* recipient after payment of fees and costs. Separately, Tomlinson and the Claims Administrator, Heffler, Radetich & Saitta, LLP, each move for an award of fees and costs from the Fund. No objections to the motions have been filed. For the following reasons, I will grant the motions for payment of fees and costs. I will hold Class Counsel's motion for final distribution in abeyance for thirty days to give Class Counsel an opportunity to respond to my conclusions regarding an appropriate *cy pres* recipient and method of distribution.

### Background

This litigation began as a class action under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4. Plaintiffs alleged losses from misrepresentations in the prospectus and proxy materials provided to shareholders during the 1998 merger of NationsBank and BankAmerica that formed Bank of

America Corporation.  The cases were transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Missouri.  Four plaintiff classes were certified:  two classes of NationsBank shareholders and two classes of BankAmerica shareholders.  The cases were resolved with a global settlement of $490 million, which was approved by the district court in 2002 and affirmed by the Eighth Circuit Court of Appeals in 2003.  (ECF 571, 602.)  Two Settlement Funds were established – one for each of the two sets of classes – with the NationsBank Classes receiving $333.2 million.  As part of the settlement, Bank of America disclaimed any interest in the Settlement Funds such that any remaining money after distribution to class members would not revert back to it.  The settlement agreement provided that all unclaimed monies in the Settlement Funds and any other reserved funds not expended may be donated to an organization *cy pres*.[1] (ECF 588.)

The first distribution of settlement monies to authorized claimants was made in June 2004.  (ECF 630.)  Another distribution was ordered in June 2008.  (ECF 694.)  Later in 2008, however, it was discovered that a Heffler employee, Christian Penta, and others had defrauded the NationsBank Settlement Fund of $5.8 million.  Penta and his co-conspirators were indicted on charges of mail fraud, wire fraud,

---

[1] The Eighth Circuit later determined that this provision of the settlement agreement was void *ab initio* to the extent it permitted the district court to exercise its "sole discretion" in making a *cy pres* distribution.  *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1066 (8th Cir. 2015).

tax evasion, and money laundering for their conduct involving the Fund and other class-action settlement funds not related to this litigation.  Penta later pled guilty, was sentenced to 60 months' imprisonment, and was ordered to pay restitution to Heffler.  *See United States v. Penta, et al.*, Case No. 2:08-CR-550 TJS (E.D. Pa. Sept. 23, 2010) (Amd. Jmt.).[2]  Heffler, acting in a fiduciary capacity, presently receives the restitution monies and pays the relevant portion thereof into the NationsBank Settlement Fund every six months.  So far, about $500,000 has been recovered and included in distributions to the NationsBank Class members. Heffler will continue to receive restitution monies into the future, albeit in unknown amounts.

After 2008, several distributions from the NationsBank Settlement Fund were made in fits and starts to the NationsBank Class members, with the final distribution being completed this past summer.  Disbursements for fees and costs were likewise periodically made from the Fund to Class Counsel and the Claims Administrator.  As of October 24, 2022, the balance of the Net NationsBank Settlement Fund totaled $109,212.83, comprising $59,212.83 in the Distribution Fund (that portion of the Net Fund eligible to be distributed to class members), $10,000 in reserve for Class Counsel's fees and costs, and $40,000 in reserve for the Claims Administrator's fees and costs.

---

[2] Three of Penta's co-conspirators were also ordered to pay restitution to Heffler.

Class Counsel now moves for a final award of attorney's fees in the amount of $16,125. He does not seek reimbursement for any costs. The Claims Administrator seeks fees and costs, including future fees and costs, totaling $46,282.99. Finally, Class Counsel moves that after payment of fees and costs, the remaining balance of the Settlement Fund be distributed to a *cy pres* recipient. Class Counsel also requests that future Penta-fraud restitution monies Heffler receives as fiduciary for the NationsBank Classes likewise be distributed to a *cy pres* recipient.

## Fees and Costs

I have reviewed Class Counsel's and the Claims Administrator's requests for fees and costs, as well as their supporting documentation, and find that the work expended was necessary and the amount of fees and costs reasonable. I will therefore grant their requests and order that the respective awards be paid from the Net NationsBank Settlement Fund. I will also grant the Claims Administrator's request for future fees and costs it expects to incur in closing the Fund and in monitoring and managing future restitution payments. Accordingly, I will award Class Counsel Frank H. Tomlinson attorney's fees in the amount of $16,125, to be paid from the Net NationsBank Settlement Fund. I will award Claims Administrator Heffler, Radetich & Saitta, LLP, fees and costs in the amount of $46,282.99, to be paid from the Net NationsBank Settlement Fund.

## *Cy Pres* **Distribution**

After payment of fees and costs as set out above, about $46,804 will remain in the Net Settlement Fund.  Class Counsel moves that these remaining Fund monies and all future restitution monies from the Penta fraud be distributed to a *cy pres* recipient.

"The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means 'as near as possible.'"  *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002).  "In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds." *Id.*  "In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.*

As the Eighth Circuit recognized in *In re BankAmerica*, the American Law Institute recommends that courts apply the following criteria when considering a *cy pres* distribution:

> A court may approve a settlement that proposes a cy pres remedy. . . . The court must apply the following criteria in determining whether a cy pres award is appropriate:
>
> (a)  If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.

(b)  If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

(c)  If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach.  The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.  If, and only if, no recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

775 F.3d at 1063-64 (quoting ALI Principles of the Law of Aggregate Litigation, §

3.07 (2010)).  Upon consideration of these ALI principles as well as its own

precedent, the Eighth Circuit clarified its legal principles for *cy pres* distributions:

1) a *cy pres* distribution of unclaimed settlement funds to a third party is

permissible only when it is not feasible to make further distributions to class

members; 2) a *cy pres* distribution is not authorized by simply declaring that all

class members who submitted claims have been satisfied in full; 3) a district court

may not order a *cy pres* distribution based only on its sole discretion; 4) unless the

amount of funds to be distributed is de minimis, a district court should make a *cy

pres* proposal publicly available and allow input from class members; and 5) any

*cy pres* distribution must be for the next best use for indirect class benefit, and for uses consistent with the nature of the underlying action and with the judicial function.  *Id.* at 1064-67.

A.     Feasibility of Further Distributions

About $46,804 in the Fund is presently eligible for distribution.  As set out in earlier Orders and applications for fees, the Claims Administrator incurs an average of $30,000 in fees and costs per distribution to class members.  Assuming that the Claims Administrator would incur a similar amount for another such distribution, deducting that fee amount from the Fund would leave $16,804 for distribution to eligible class members.  With more than 3000 eligible members currently in the NationsBank Classes (*see* ECF 1066-1, 1068-1), each would receive an average of about $5 if there was another class distribution.  And given the likelihood that Class Counsel would seek additional fees for work related to another distribution, the Fund would be reduced even further, leading to a lesser average amount distributed to each class member.  Accordingly, when compared to the small amounts the eligible claimants would receive, the cost of making another distribution does not appear to be economically viable.  In such a circumstance, a *cy pres* award is appropriate.

B.     Satisfaction in Full

Class Counsel does not assert as a basis for *cy pres* distribution that the

NationsBank Class members have had their claims satisfied in full.

C.    Discretion of the Court

The "[d]istribution of funds at the discretion of the court is not a traditional Article III function." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38 (1st Cir. 2012). "[T]he adversary process is better suited to the parties making the decisions and leaving less to the discretion of the judges." *Id.*

Here, the settlement agreement negotiated by the parties, approved by the district court, and affirmed on appeal provided that all unclaimed settlement funds plus any funds designated for administration that were not expended "may be contributed as a donation to one or more non-sectarian, not-for-profit 501(c)(3) organizations[.]" (ECF 588 at hdr. p. 37.)[3]  No objection to a potential *cy pres* award was made to the district court at the time of settlement or on appeal of the court's approval of the settlement agreement.  When the district court in June 2013 ordered *cy pres* distribution of the $2.3 million that remained in the NationsBank Settlement Fund, the Class Representative appealed, arguing that *cy pres* distribution was inappropriate in the circumstances because:  1) an additional distribution to class members was feasible, and 2) the *cy pres* recipient was not the "next best" recipient of the settlement funds.  The Eighth Circuit agreed and

---

[3] As indicated *supra* at n.1, the Eighth Circuit voided *ab initio* that part of the provision that granted the district court sole discretion in determining a *cy pres* distribution.  775 F.3d at 1066.

reversed the district court's *cy pres* Order.  *See generally In re BankAmerica*, 775

F.3d 1060 (8th Cir. 2015).  Since that time, Class Counsel has proposed on more

than one occasion – and indeed has moved for – *cy pres* distribution after

additional distribution(s) to the class members are no longer feasible.  As discussed

above, we are at that point.

Accordingly, my determination here that a *cy pres* distribution is appropriate

is not based only on my discretion, but rather upon serious consideration of the

economic viability and feasibility of distributing to class members the de minimis

monies remaining in the Fund.  I have also considered the expenditure of related

fees and costs in making additional distribution(s), which would further reduce the

amount of distributable funds.  Finding that further distribution to class members

would not be feasible, I conclude that *cy pres* distribution is appropriate.

D.     Public Notice

"[U]nless the amount of funds to be distributed *cy pres* is de minimis, the

district court should make a *cy pres* proposal publicly available and allow class

members to object or suggest alternative recipients before the court selects a *cy

pres* recipient."  *In re BankAmerica*, 775 F.3d at 1066.  "This gives class members

a voice in choosing a 'next best' third party and minimizes any appearance of

judicial overreaching."  *Id.* (citations omitted).

Here, the monies in the Fund presently eligible for distribution are de

minimis, representing less than 0.015 percent of the $333.2 million NationsBank

Settlement.  And it would not be economically viable for future Penta-fraud

restitution payments to be distributed to class members, given that the

administrative costs alone of distributing these monies to class members when

received would exceed the restitution receipts.[4]  I therefore do not consider the

$5.8 million defrauded from the Settlement Fund as monies eligible to be

distributed to class members in the future.  Accordingly, because what remains in

the Settlement Fund for distribution is de minimis, publication to class members of

a proposed *cy pres* distribution is not required.  Out of an abundance of caution,

however, as discussed more fully below, I will give Class Counsel thirty days

within which to object to the *cy pres* proposal set out in this Order.

E.     *Cy Pres* Recipient

The proper *cy pres* recipient must now be determined.  According to the

Eighth Circuit, this "next best" recipient of unclaimed funds must have "interests

reasonably approximate [to] those being pursued by the class."  *In re

BankAmerica*, 775 F.3d at 1067; ALI § 3.07(c).  I "must carefully weigh all

considerations, including the geographic scope of the underlying litigation, and

make a thorough investigation to determine whether a recipient can be found that

---

[4] In a six-month period, Heffler receives anywhere from a few hundred to a few thousand dollars
in NationsBank restitution payments from the Penta fraud.

most closely approximates the interests of the class." *In re BankAmerica*, 775 F.3d at 1067 (internal quotation marks and citations omitted). In this securities fraud case, "non-profit organizations devoted to preventing and aiding the victims of securities fraud . . . must be thoroughly explored" before accepting a "totally unrelated charity" as a "next best" recipient. *Id.*

In *In re BankAmerica*, the Eighth Circuit suggested that the Fair Funds program authorized by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7246, and managed by the Securities and Exchange Commission, may be an appropriate *cy pres* recipient. *See* 775 F.3d at 1067. Class Counsel researched the feasibility of a distribution to the Fair Funds program and learned that there was no mechanism for the SEC to receive *cy pres* monies and, further, that excess monies from SEC class actions are turned over to the United States Treasury. Accordingly, it appears that monies from this litigation could have the unintended result of benefiting the U.S. Treasury and not securities fraud victims. I agree with Class Counsel that the Fair Funds program is not an appropriate *cy pres* recipient.[5]

In a Status Report filed May 14, 2020, Class Counsel suggested surplus settlement monies and future restitution monies be paid *cy pres* to "several public teachers' union pension funds that are eligible members of the NationsBank

---

[5] In my February 2018 Memorandum and Order authorizing *cy pres* distribution of surplus monies from the BankAmerica Fund, additional reasons are set out as to why the Fair Funds program is not an appropriate *cy pres* recipient. (*See* ECF 945 at pp. 7-8.)

classes." (ECF 1029 at p. 8.)  In his current motion for final distribution, Class

Counsel suggests *cy pres* distribution to the Bank of America Common Stock

Fund, noting that this class claimant "particularly stands out" "when reviewing the

largest claimants in the NationsBank distributions that were damaged[.]"  (ECF

1069 at p. 6.)  I question whether favoring a specific class claimant to receive the

residual monies of the Settlement Fund most closely approximates the interests of

the *entire* class and reflects the geographic scope of this litigation.  Indeed, as

recently stated by the Western District of Missouri, "[W]hile the settlement fund

belongs to the class as a whole, it cannot fairly be said that the remainder belongs

to any one member." *Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2021 WL

2426126, at *8 (W.D. Mo. May 13, 2021), *aff'd*, 38 F.4th 693 (8th Cir. 2022).

Other than stating that these class claimants are closely related to this litigation,

Class Counsel provides no real explanation as to why they would be appropriate *cy*

*pres* recipients.

Class Counsel also suggests the American Bar Association as a *cy pres*

recipient, and particularly the Securities Litigation Committee given its "'diverse

membership that includes attorneys from both the plaintiff and defense perspective,

corporate counsel, and academics.  The committee strives to be an invaluable

resource to those practicing or interested in securities litigation, arbitration, or

regulatory enforcement matters.'"  (ECF 1069 at pp. 7-9 (quoting

https://www.americanbar.org/groups/litigation/committees/securities).)  The
Eighth Circuit directed this Court, however, to "look for a recipient that relates
directly to the injury alleged in this lawsuit and settlement by the parties[]" and to
investigate potential *cy pres* recipients that are "devoted to preventing and aiding
the victims of securities fraud."  *In re BankAmerica*, 775 F.3d at 1067 (cleaned up)
(internal quotation marks and citation omitted).  The proposed ABA committee is
oriented toward lawyer education in securities-related matters.  I cannot say that it
relates directly to the injury alleged in this lawsuit or that its purpose is devoted to
preventing securities fraud and aiding victims of such fraud.

I have carefully weighed the relevant considerations in this case, including
the nationwide scope of this class-action litigation, the nature of the securities
fraud that formed the basis of the claims, and the thousands of securities-fraud
victims here – both compensated and uncompensated.  Against this backdrop, I
searched for and thoroughly explored non-profit organizations devoted to
preventing and aiding the victims of securities fraud.  From this endeavor, I
discovered "The National Center for Victims of Crime" (NCVC) – and particularly
NCVC's Financial Crime Resource Center, which receives assistance from the
Financial Industry Regulatory Authority (FINRA):

> The Financial Crime Resource Center was established to help victims
> of financial crime recover their assets and regain control of their lives
> through partnerships and training.  We provide technical assistance to
> organizations assisting victims with various types of fraud, including

> identity theft, investment fraud, cybercrime, and financial exploitation. We conduct this work through partnerships, and the FINRA Investor Education Foundation has worked with us since we began assisting victims of fraud.

*See* https://victimsofcrime.org/financial-crime-resource-center/. Notably, the NCVC is an organization that the United States Department of Justice recommends victims contact for assistance. *See* https://www.justice.gov/enrd/assistance-and-resources-victims. The NCVC is a non-profit organization, and its Financial Crime Resource Center is devoted to preventing and aiding the victims of financial fraud, including investor and securities fraud. Because the Financial Crime Resource Center is more closely tailored to the interests of the NationsBank Classes and the purposes of the underlying litigation, it represents the next best recipient of the de minimis monies remaining in the NationsBank Settlement Fund.

As discussed above, Heffler will continue to receive restitution payments from the Penta fraud after final distribution and closure of the Settlement Fund. I agree with Class Counsel that those periodic restitution payments should be distributed to a *cy pres* recipient that is able to accept the monies for a period extending well into the future. Given the indeterminable amount of money that Heffler receives in a given period and the unknown duration of how long Heffler will receive restitution payments, I must be satisfied that the *cy pres* recipient of those monies must not only be the "next best" recipient but can accept them long into the future. With these considerations, I conclude that the ABA Securities

- 14 -

Litigation Committee as proposed by Class Counsel is an appropriate recipient of these future funds.  The ABA has been in existence for more than 140 years, and its established history portends a lengthy and continuous future existence.

6.    Conclusion Regarding *Cy Pres* Award and Recipients

Upon thorough investigation and careful consideration of all factors relevant to this litigation, I conclude that the Financial Crime Resource Center of the NCVC is the appropriate *cy pres* recipient of the balance of the Net NationsBank Settlement Fund that will remain after payment of fees and costs to Class Counsel and the Claims Administrator.  I further conclude that the ABA Securities Litigation Committee is the appropriate *cy pres* recipient of the restitution monies that Heffler will continue to collect from the Penta fraud after the NationsBank Settlement Fund is closed; and that six months after closing the Fund, and continuing every six months thereafter, Heffler should transfer collected Penta-fraud restitution monies to the ABA Securities Litigation Committee.

Because my conclusions as to appropriate *cy pres* recipients and methods of distribution vary from Class Counsel's proposals, I will give Class Counsel thirty days to inform the Court whether he objects to my determination.  I will construe a lack of timely objection as a concession to my conclusions set out above, which will result in an Order of *Cy Pres* Distribution consistent therewith.

Therefore, for all of the foregoing reasons,

- 15 -

**IT IS HEREBY ORDERED** that Class Counsel's Application for Attorney's Fees [1070] is **GRANTED**.  Frank H. Tomlinson, as Class Counsel, is awarded attorney's fees in the amount of $16,125, to be paid from the Net NationsBank Settlement Fund.

**IT IS FURTHER ORDERED** that the Claims Administrator's Application for Award of Fees and Expenses [1071] is **GRANTED**.  Heffler, Radetich & Saitta, LLP, as Claims Administrator, is awarded fees and costs in the amount of $46,282.99, to be paid from the Net NationsBank Settlement Fund.

**IT IS FURTHER ORDERED** that Class Counsel's Motion for Final Distribution of NationsBank Settlement Funds [1069] is **HELD IN ABEYANCE** for thirty (30) days.  Class Counsel shall have thirty (30) days from the date of this Memorandum and Order to object to the Conclusions Regarding *Cy Pres* Award and Recipients as set out in this memorandum.  A lack of timely objection will be construed as a concession to the Conclusions, upon which an Order of *Cy Pres* Distribution consistent therewith will be entered.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2022.